## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JA SOLAR TECHNOLOGY YANGZHOU CO., LTD., AND SHANGHAI JA SOLAR TECHNOLOGY CO., LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Ct. No. 22-00223 |

### COMPLAINT

Plaintiffs JA Solar Technology Yangzhou Co., Ltd., and Shanghai JA Solar Technology Co., Ltd. (collectively "JA Solar"), by and through their counsel, allege as follows:

### I.    PROCEEDING UNDER REVIEW

1.    This action seeks judicial review of certain aspects of the final results of the eighth administrative review of the antidumping duty order on Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China conducted by the Department of Commerce ("Commerce").  See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2019-2020, 87 Fed. Reg. 38,379 (Dep't Commerce Jun. 28, 2022) ("Final Results"), and accompanying Issues and Decision Mem. ("Final IDM"), amended by Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2019-2020, 87 Fed. Reg. 48,621 (Dep't Commerce Aug. 10, 2022).  The review in question covers entries of crystalline silicon photovoltaic cells,

whether or not assembled into modules, during the period December 1, 2019 through November 30, 2020.

## II.     JURISDICTION AND STANDARD OF REVIEW

2.     JA Solar brings this action pursuant to the Tariff Act of 1930, as amended (the "Act"), sections 516A(a)(2)(A)(i) and 516A(a)(2)(B)(iii), 19 U.S.C. § 1516a(a)(2)(A)(i), (a)(2)(B)(iii).

3.     This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and section 516A(a)(2)(A)(i), (B)(iii) of the Act, 19 U.S.C. § 1516a(a)(2)(A)(i), (B)(iii).

4.     The standard of review, as set forth in section 516A(b)(1)(B)(i) of the Act, 19 U.S.C. § 1516a(b)(1)(B)(i), is whether the determinations, findings or conclusions of Commerce were "unsupported by substantial evidence on the record, or otherwise not in accordance with law."

## III.     STANDING

5.     JA Solar consists of foreign producers and exporters of crystalline silicon photovoltaic cells, whether or not assembled into modules.  JA Solar is, therefore, an "interested party" within the meaning of sections 771(9)(A) and 516A(f)(3) of the Act, 19 U.S.C. §§ 1677(9)(A) and 1516a(f)(3).

6.     Accordingly, JA Solar has standing to commence this action pursuant to 28 U.S.C. § 2631(c).

## IV.     TIMELINESS OF THIS ACTION

7.     On June 28, 2022, Commerce published the Final Results in the Federal Register.

8. JA Solar filed a summons to initiate this case on July 28, 2022, within 30 days of the publication in the Federal Register of the Final Results. This complaint is being filed within 30 days after the date on which the summons was filed.

9. Thus, JA Solar's summons and complaint are timely filed pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i) and (B)(iii) and USCIT R. 3(a)(2), 6(a).

## V.   STATEMENT OF FACTS

10. Commerce initiated the antidumping duty investigation of crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China on November 16, 2011, following the filing of the petition on October 19, 2011. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Antidumping Duty Investigation, 76 Fed. Reg. 70,960 (Dep't Commerce Nov. 16, 2011). The International Trade Commission ("Commission") simultaneously conducted its investigation. See Crystalline Silicon Photovoltaic Cells and Modules From China; Institution of Antidumping and Countervailing Duty Investigations and Scheduling of Preliminary Phase Investigations, 76 Fed. Reg. 66,748 (Int'l Trade Comm'n Oct. 27, 2011).

11. On December 7, 2012, Commerce issued an amended final determination and antidumping duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China following an affirmative antidumping duty determination and an affirmative injury determination by the Commission. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value, and Antidumping Duty Order, 77 Fed. Reg. 73,018 (Dep't Commerce Dec. 7, 2012).

12. Between December 2019 and February 2020, certain interested parties requested that Commerce conduct an administrative review of the antidumping duty order on crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China. On February 4, 2021, Commerce initiated the eighth administrative review of the antidumping duty order covering the period December 1, 2019 through November 30, 2020. See Initiation of Antidumping and Countervailing Duty Administrative Reviews, 86 Fed. Reg. 8,166 (Dep't Commerce Feb. 4, 2021).

13. On May 6, 2019, Commerce selected two mandatory respondents: (1) Jinko Solar Import and Export Co., Ltd. ("Jinko") and (2) Risen Energy Co., Ltd. ("Risen). See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review, Partial Rescission of Antidumping Administrative Review, and Preliminary Determination of No Shipments; 2019-2020, 86 Fed. Reg. 72,923 (Dep't Commerce Dec. 23, 2021) ("Preliminary Results"), and accompanying Issues and Decision Memorandum at 2 ("Prelim. IDM").

14. The mandatory respondents timely responded to Commerce's antidumping questionnaire, double remedy questionnaire, and various supplemental questionnaires. See id.

15. Between May and August 2021, interested parties submitted comments on the surrogate country list, surrogate county and surrogate value selection. See id.

16. On December 23, 2021, Commerce published the Preliminary Results. In the Preliminary Results, Commerce determined that JA Solar was entitled to a separate rate of 23.17 percent based on the weighted-average dumping margin for Jinko, i.e., 32.69 percent, and Risen, i.e., 19.26 percent, the two mandatory respondents in the administrative review at issue. See Preliminary Results, 86 Fed. Reg. at 72,925.

17. On January 28, 2022, JA Solar submitted a letter in lieu of a case brief, concurring with and incorporating, by reference, the arguments made by Jinko and Risen, for Commerce's consideration prior to issuing the Final Results. See Final IDM at 3. On February 10, 2022, JA Solar submitted a rebuttal brief incorporating all rebuttal arguments made by Jinko and Risen. See id.

18. On May 25, 2022, Commerce rejected Jinko's case brief on the basis that it included untimely new factual information. See id. Jinko filed a request for reconsideration on May 26, 2022 and resubmitted its case brief with redactions required by Commerce on May 27, 2022. See id.

19. On June 28, 2022, Commerce published the Final Results. Commerce determined that JA Solar was entitled to a separate rate. Final Results, 87 Fed. Reg. at 38,380. Commerce determined the separate rate assigned to JA Solar to be 10.24 percent based on the weighted-average dumping margin for Jinko i.e., 15.71 percent, and Risen, i.e., 8.00 percent, the two mandatory respondents in the administrative review. Id.

20. In the Final Results, Commerce selected Malaysia as the surrogate country for purposes of calculating normal value and made various surrogate value selections pursuant to that decision using Malaysian data, including surrogate values for backsheet, ethylene vinyl acetate ("EVA") sheet, welding wire, sponge cover, wooden board, lift stands, electricity and steam. See Final IDM at Cmts 10-12, 17, 19, 21-22. Commerce, however, went outside of Malaysia when it selected Romanian Harmonized Tariff Heading ("HTS") subheading 7007.19.80, in lieu of import values under Malaysian HTS 7007.19.90, as its surrogate value for solar glass. See id. at Cmt. 3.

21. In the Final Results, Commerce calculated its surrogate financial ratios using the financial statements from a single company, JA Solar (Malaysia) SDN. See id. at Cmt. 8.

22. In the Final Results, Commerce used an average of the Descartes and Maersk data to calculate a surrogate value for international freight services for the two mandatory respondents. See Cmt. 4. In calculating its average, Commerce calculated separate rates for shipping from China to specific U.S. ports. See id.

23. In the Final Results, Commerce relied on Freightos data, in lieu of International Air Transport Association data, to value Jinko's air freight. See Cmt. 9.

24. In the Final Results, Commerce deducted section 301 duties from U.S. sales prices when calculating Jinko's dumping margins. See Cmt. 31.

25. In the Final Results, Commerce applied partial Adverse Facts Available ("AFA") to calculate Risen's dumping margin on the basis that certain unaffiliated suppliers of solar cells and modules did not report their factors of production ("FOPs"). See id. at Cmt. 1. Commerce "applied AFA by calculating average ratios of the reported consumption quantities to the highest consumption quantities for three separate groups of inputs, all solar module FOPs, all solar cell FOPs, and all packing FOPs. Commerce then multiplied the reported per-unit consumption quantity of each solar module FOP, each solar cell FOP, and each packing FOP, by the relevant average adjustment ratio to increase the reported quantities, as AFA." See id. at Cmt. 2.

26. On August 10, 2022, in response to a ministerial allegation, Commerce amended the Final Results. See Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Amended Final Results of Antidumping Duty Administrative Review, 2019–2020, 87 Fed. Reg. 48,621 (Dep't Commerce Aug. 10, 2022). Commerce increased the separate rate assigned to JA Solar to 14.79 percent based on the weighted-average dumping margin for Jinko, i.e., 20.99 percent, and Risen, i.e., 12.24 percent, the two mandatory respondents in the administrative review at issue. See id.

## VI.     STATEMENT OF THE CLAIMS

### COUNT ONE

27.    JA Solar herein incorporates by reference paragraphs 1 through 26, supra, of this complaint.

28.    Commerce's decision in the Final Results to value solar glass using Romanian HTS 7007.1980 was not supported by substantial evidence and was otherwise not in accordance with law because data under Malaysian HTS 7007.19.90 reflects the best available information.

### COUNT TWO

29.    JA Solar herein incorporates by reference paragraphs 1 through 28, supra, of this complaint.

30.    Commerce's decision in the Final Results to value Jinko's welding wire using Malaysian HTS 8311.30.91 was not supported by substantial evidence and was otherwise not in accordance with law because import data under HTS 8311.20.90 reflects the best available information.

### COUNT THREE

31.    JA Solar herein incorporates by reference paragraphs 1 through 30, supra, of this complaint.

32.    Commerce's decision in the Final Results to value Jinko's sponge cover using HTS 3923.50 was not supported by substantial evidence and was otherwise not in accordance with law because import data under HTS 3910.10.90 reflects the best available information.

### COUNT FOUR

33.    JA Solar herein incorporates by reference paragraphs 1 through 32, supra, of this complaint.

34. Commerce's decision in the Final Results to value Jinko's wooden board and lift stand inputs using HTS 4415.20 was not supported by substantial evidence and was otherwise not in accordance with law because data under HTS 4413 on the record reflects the best available information.

## COUNT FIVE

35. JA Solar herein incorporates by reference paragraphs 1 through 34, supra, of this complaint.

36. Commerce's decision in the Final Results to value electricity using only peak hour rates reported from the peninsular Malaysia region was not supported by substantial evidence and was otherwise not in accordance with law because Commerce inappropriately excluded from its calculation electricity rates for off-peak hours, and rates applicable to other geographical regions.

## COUNT SIX

37. JA Solar herein incorporates by reference paragraphs 1 through 36, supra, of this complaint.

38. Commerce's decision in the Final Results to value steam using HTS 2711.11 was not supported by substantial evidence and was otherwise not in accordance with law because this HTS category covers liquid natural gas, which is not in the same form as the steam purchased and used by Jinko.

## COUNT SEVEN

39. JA Solar herein incorporates by reference paragraphs 1 through 38, supra, of this complaint.

40. Commerce's decision in the <u>Final Results</u> to value air freight using Freightos data was not supported by substantial evidence and was otherwise not in accordance with law because the IATA data on the record reflect the best available information.

## **COUNT EIGHT**

41. JA Solar herein incorporates by reference paragraphs 1 through 40, <u>supra</u>, of this complaint.

42. Commerce's decision in the <u>Final Results</u> to value ocean freight using an average of Maersk and Descartes data, and its selected averaging methodology, was not supported by substantial evidence and was otherwise not in accordance with law because the Maersk data contain flaws and the Descartes data alone reflect the best available information.

## **COUNT NINE**

43. JA Solar herein incorporates by reference paragraphs 1 through 42, <u>supra</u>, of this complaint.

44. Commerce's decision in the <u>Final Results</u> to calculate surrogate financial ratios using only financial statements from JA Solar was not supported by substantial evidence and was otherwise not in accordance with law because Commerce failed to include the financial statements of Flextronics Shah Alam SDN. BHD.

## **COUNT TEN**

45. JA Solar herein incorporates by reference paragraphs 1 through 44, <u>supra</u>, of this complaint.

46. Commerce's rejection of Jinko's case brief on May 25, 2022 on the basis that it contained untimely filed new factual information was not supported by substantial evidence and was otherwise not in accordance with law.

**COUNT ELEVEN**

47. JA Solar herein incorporates by reference paragraphs 1 through 46, supra, of this complaint.

48. Commerce's deduction of Section 301 duties paid by the importer of record upon entry from its U.S. price calculations was not supported by substantial evidence and was otherwise not in accordance with law because section 301 duties are special, remedial duties, and not the normal import duties that are deducted from subject merchandise prices under section 772(c)(2)(A) of the Act.

**COUNT TWELVE**

49. JA Solar herein incorporates by reference paragraphs 1 through 48, supra, of this complaint.

50. Commerce's decision in the Final Results to value Risen's backsheet using HTS 3920.62.10 was not supported by substantial evidence and was otherwise not in accordance with law because data under HTS 3920.62.90 reflect the best available information.

**COUNT THIRTEEN**

51. JA Solar herein incorporates by reference paragraphs 1 through 50, supra, of this complaint.

52. Commerce's decision in the Final Results to value Risen's EVA using HTS 3920.10.19 was not supported by substantial evidence and was otherwise not in accordance with law because data under HTS 3920.10.90 reflect the best available information.

**COUNT FOURTEEN**

53. JA Solar herein incorporates by reference paragraphs 1 through 52, supra, of this complaint.

54. Commerce's decision in the <u>Final Results</u> to apply AFA to Risen due to the failure of certain of its unaffiliated suppliers of solar cells and modules to report their FOPs, and Commerce's application of AFA in its calculation methodology, was not supported by substantial evidence and was otherwise not in accordance with law.

## COUNT FIFTEEN

55. JA Solar herein incorporates by reference paragraphs 1 through 54, <u>supra</u>, of this complaint.

56. Commerce's calculation of the "all others" rate based on a weighted-average of the rates calculated for Jinko and Risen, and the assignment of that rate to JA Solar was not supported by substantial evidence and contrary to law because of the errors outlined above in Counts One through Fourteen.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, JA Solar respectfully prays that this Court:

(1) declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(2) remand these matters to Commerce for redetermination consistent with the Court's opinion, including a recalculation of the margin for Jinko and Risen;

(3) order Commerce to redetermine the separate rate assigned to JA Solar based upon the corrected rate calculated for Jinko and Risen;

(4) order Commerce to publish amended final results in the Federal Register in accordance with a final decision by this Court in this matter;

(5) order Commerce to issue liquidation instructions to U.S. Customs and Border Protection consistent with this Court's decision; and

(6) provide such other relief as this honorable Court deems proper.

          Respectfully submitted,

          /s/ Jeffrey S. Grimson
          Jeffrey S. Grimson
          Sarah M. Wyss
          Bryan P. Cenko
          Jacob M. Reiskin
          Mowry & Grimson, PLLC
          5335 Wisconsin Avenue, Suite 810
          Washington, DC 20015
          202-688-3610
          trade@mowrygrimson.com

Date: August 26, 2022          *Counsel to JA Solar*